UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MANUELA SIERRA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11CV2045 JAR |
| ) | |
| METLIFE INSURANCE COMPANY OF ) | |
| CONNECTICUT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment (ECF Nos. 15, 18). These motions are fully briefed and ready for disposition.

## BACKGROUND

On June 7, 2002, The Travelers Indemnity Company of America and Jaime Sierra entered into a Settlement Agreement and Release ("Settlement Agreement") for the settlement of Jaime Sierra's personal injury claims against one or more persons or entities insured by the Travelers Indemnity Company of America. (Parties' Joint Statement of Uncontroverted Material Facts ("SUMF"), ECF No. 17), ¶3). As outlined in the Settlement Agreement, Travelers was required to make periodic payments to Mr. Sierra. (Id.). The Travelers Indemnity Company of America also could make a qualified assignment to the Travers Life and Annuity Company which, in turn, had the right to fund the obligation to make period payments through the purchase of an annuity policy from the Travelers Insurance Company. (Id.).

On June 25, 2002, the Travelers Insurance Company issued an annuity contract ("Annuity Contract"), owned by Travelers Life and Annuity Company and having a contract date of May 9, 2002, to fund the obligation to make period payments pursuant to a Uniform Qualified Assignment

from Travelers Indemnity Company to Travelers Life and Annuity Company. (Id., ¶4). MetLife Insurance Company of Connecticut is the successor to Travelers Life and Annuity Company and Travelers Insurance Company. (Id., ¶5). Mr. Sierra is the measuring life and the payee under the Annuity Contract. (Id., ¶6).

The Settlement Agreement and the Annuity Contract provide for payments of $800 a month to Mr. Sierra, guaranteed for twenty years, as well as a number of lump sum payments. (Id., ¶7). The Uniform Qualified Assignment obligates MetLife to make these payments. (Id.).

On December 8, 2006, Mr. Sierra executed a Durable General Power of Attorney, wherein he named Plaintiff/Counterclaim Defendant Manuela Sierra (hereinafter "Plaintiff") as his attorney-in-fact. (Id., ¶8). On September 1, 2010, MetLife wrote Mr. Sierra at the address he provided and asked him to confirm his address and to provide his date of birth and social security number. (Id., ¶9). Plaintiff responded that she "would like to know if the check can go under my name." (Id.). MetLife responded that it was unable to provide Plaintiff with any information because it can only respond to requests from annuitants. (Id., ¶10).

Plaintiff's counsel told MetLife that she had a power of attorney from Mr. Sierra. (Id., ¶11). MetLife responded that it does not accept or recognize a power of attorney under structured settlements. (Id., ¶12). MetLife stated that it--not Mr. Sierra--owns the structured settlement and, therefore, Mr. Sierra does not have the authority to assign power of attorney rights to the Annuity Contract. (Id., ¶13).

Thereafter, Plaintiff filed an action in St. Louis County Circuit Court, asking the Court to require MetLife "to recognize the Durable Power of Attorney" and "to honor the various check issued under and pursuant to said Annuity Contract". (Verified Petition, hereinafter "Complaint" or "Compl.", ECF No. 3). Plaintiff also wants the Court to require MetLife to accept an endorsement on said checks made by Plaintiff as the power of attorney of Jaime Sierra, "thus

- 2 -

permitting plaintiff to negotiate same as the power of attorney of Jaime Sierra[.]" (Id.).  On November 23, 2011, MetLife removed this action to federal court based upon diversity jurisdiction, 28 U.S.C. §§1332, 1441.

Beginning November 2, 2011, MetLife issued checks, made payable to Mr. Sierra, pursuant to the Annuity Contract, and mailed them to the last address provided by him.  (Id., ¶14).  Since the filing of the action, Plaintiff's counsel advised MetLife that she successfully negotiated the checks issued by MetLife to Mr. Sierra, but that she wants to utilize the Durable Power of Attorney to change the mailing address for the payments.  (Id., ¶15).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56©; Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

### I.   JUSTICIABLE CONTROVERSY

Although the Complaint is not titled as such, the parties both seek declaratory relief. The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties "in a case of actual controversy." 28 U.S.C. § 2201. The requirement of an "actual controversy" is imposed by Article III of the Constitution. Diagnostic Unit Inmate Council v. Films, Inc., 88 F.3d 651, 653 (8th Cir. 1996)(citing Steffel v. Thompson, 415 U.S. 452, 458, 39 L. Ed. 2d 505, 94 S. Ct. 1209 (1974)). In determining whether there is an "actual controversy" between the Plaintiff and MetLife, the test is whether "there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941); Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506, 32 L. Ed. 2d 257, 92 S. Ct. 1749 (1972); Diagnostic Unit Inmate Council, 88 F.3d at 653. The controversy must be definite and concrete touching the legal relations of parties having adverse legal interests. The questions presenting a controversy must not be abstract but must define issues which are concrete and specific. Cass Cty. v. United States, 570 F.2d 737, 740 (8th Cir. 1978).

MetLife asserts that this Court has a justiciable controversy because "Plaintiff claims a right to require MetLife to honor to Durable Power of Attorney and to honor requests made by Plaintiff as attorney-in-fact, and there is a genuine dispute between the parties as to whether Plaintiff has such a right or whether MetLife may insist that all written requests bear the signature of the annuitant, Jaime Sierra." (ECF No. 16, p. 6).

Similarly, Plaintiff contends that "the only remaining controversy (however slight) is any issue remaining with respect to the negotiation in the future of additional checks, the question of Mrs. Sierra's authority to change the address, and the validity or lack thereof of MetLife's policy requiring the annuitant's signature." (ECF No. 20, p. 2). Plaintiff claims that "[i]t is in the best interest of both parties to have the Court declare the Power of Attorney to be valid so as to avoid further controversy **in the future**." (Id. (emphasis added)).

The Court does not find any controversy with respect to the negotiation of the checks. Plaintiff has negotiated the checks sent by MetLife, and neither party is asking the Court to order that the checks be processed in Plaintiff's name. See ECF No. 20, pp. 1-2 ("Mrs. Sierra has not claimed any rights to the annuity by virtue of her status as Jaime Sierra's attorney-in-fact, but rather, has wished only to utilize the authority granted to her in the Power of Attorney to endorse the checks and to change the address to which they are sent."). Any issue with respect to the negotiation of the checks is between Plaintiff and her bank, and does not involve Met Life. Moreover, any potential controversy regarding the negotiation of future payments is not ripe for adjudication. See Texas v. United States, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-581, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985))("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"). Thus, no "actual controversy" exists with respect to "the negotiation in the future of additional checks."

The only present controversy between the parties seems to be with respect to allowing Plaintiff to change the address for mailing the checks pursuant to the Durable Power of Attorney.[1] MetLife indicates that it has mailed checks to Mr. Sierra at the last address he provided, and it "intends to do so in order to fulfill its obligations under the Annuity Contract." (ECF No. 16, p. 4). Although this is a "very slight" controversy (ECF No. 20, p. 1), the Court finds that it is actual and judicable.

**II.     MERITS**

At issue in this case is whether Plaintiff, pursuant to the Durable Power of Attorney can change the mailing address for annuity payments under the Annuity Contract.[2] MetLife argues that Plaintiff cannot make such a change because Mr. Sierra is not the owner of the annuity contract and, therefore, cannot assign rights under the contract. Plaintiff, however, argues that under the broad terms of the Durable Power of Attorney she has the right to act as her husband's attorney-in-fact and make such a change.

Plaintiff maintains that the broad language of the Durable Power of Attorney permits her to change the mailing address under the Annuity Contract. The Durable Power of Attorney provides, in pertinent part:

> GIVING AND GRANTING unto my attorney-in-fact general powers and authority to execute all documents, contracts and deeds, and to do and perform any and every act and thing whatsoever requisite, necessary or convenient to be done in and about the premises as fully and effectually, and to all intents and purposes, as I might or could do or cause to be done in my own person, if personally acting . . .

(Durable Power of Attorney, ECF No. 3-3, p. 10).

---

[1]The Court notes that this issue was not pled in the Complaint, but appears to be tried by the parties' consent pursuant to Fed.R.Civ.P. 15(b)(2).

[2]Although it is briefed by Plaintiff (ECF No. 19, pp. 3-6), the Court notes that the parties do not seem to dispute the validity of the Durable Power of Attorney. Rather, the parties' only dispute whether Plaintiff can use the Durable Power of Attorney to change the address.

In fact, the Durable Power of Attorney even contemplates that Plaintiff be able to endorse checks and change the address on behalf of Mr. Sierra. The Durable Power of Attorney designates Plaintiff "to act for me in a fiduciary capacity on my behalf, in my name, place and stead, as my agent ... to endorse ... checks." (Durable Power of Attorney, p. 2, Section IIA). Likewise, with respect to changing the address, the Durable Power of Attorney designates Plaintiff to act for Mr. Sierra "[t]o change my address with the United States Postal Services." (Durable Power of Attorney, p. 6, Section IIG). Finally, at the conclusion of the Durable Power of Attorney, Mr. Sierra ratifies every act performed by Plaintiff on his behalf pursuant to the Durable Power of Attorney. See Durable Power of Attorney, p. 10 ("I hereby ratify and confirm all that my attorney-in-fact shall do or cause to be done by virtue of this Durable Power of Attorney; and the acts of my attorney-in-fact shall be binding on me, my heirs and estate."). Thus, Plaintiff argues that she is entitled to summary judgment because she seeks to change the mailing address pursuant to a valid power of attorney.

Although MetLife purports to have a policy against recognizing assignments pursuant to durable powers of attorney, Plaintiff argues that MetLife's reliance on such a policy is misplaced given that Mr. Sierra did not make an assignment. Plaintiff asserts that her claim is not that Mr. Sierra assigned his rights under the Annuity Contract or that she can exercise his rights thereunder. (ECF No. 20, p. 3). Rather, Plaintiff argues that she is exercising her rights under the Durable Power of Attorney to act on Mr. Sierra's behalf with respect to his estate and affairs. (Id.). Thus, Plaintiff claims that MetLife simply is refusing to recognize Plaintiff's valid Durable Power of Attorney, which it cannot do.

In response, MetLife argues that it cannot be compelled to respond to a Durable Power of Attorney. MetLife maintains that it is the owner of the Annuity Contract and Mr. Sierra, as the payee under the contract, has no rights to designate an assignee for his payments.

MetLife also notes that Missouri's Durable Power of Attorney statute does not require a third party to rely on a durable power of attorney. Rather, Missouri's Durable Power of Attorney statute is written in permissive terms, stating, in part:

> A third person *may* freely rely on, contract and deal with an attorney in fact delegated general powers with respect to the subjects and purposes encompassed or expressed in the power of attorney without regard to whether the power of attorney expressly identifies the specific property, account, security, storage facility or matter as being within the scope of a subject or purpose contained in the power of attorney, and without regard to whether the power of attorney expressly authorizes the specific act, transaction or decision by the attorney in fact.

Mo.Rev.Stat. §404.710.8 (emphasis added).

In addition, MetLife points out that the exemptions of third parties from liability under the Missouri Durable Power of Attorney statute are based upon the third party's lack of actual knowledge of facts or circumstances casting doubt on either the validity of the power of attorney or the propriety of its use for the requested purpose. See Mo.Rev.Stat. § 404.719. 1[3]; ECF No. 22. MetLife claims that in this case, however, it has knowledge that would preclude it from acting accordingly to Plaintiff's request. In her Complaint, Plaintiff alleges that "in 2008, Jaime Sierra fled to whereabouts unknown and Plaintiff has had no contact with Mr. Sierra since April, 2008." (Compl., ¶11). Based upon this pleading, MetLife knows that Mr. Sierra cannot live at the address to which Plaintiff wants Mr. Sierra's checks sent. MetLife asserts that Plaintiff recognizes that the checks cannot be issued in her name (as originally requested) and instead seeks to gain control over the annuity payments by having the checks sent to an address selected by her and where Mr. Sierra

---

[3]Mo.Rev.Stat. § 404.719. 1provides that:
 A third person, who is acting in good faith, without liability to the principal or the principal's successors in interest, may rely and act on any power of attorney executed by the principal; and, with respect to the subjects and purposes encompassed by or separately expressed in the power of attorney, may rely and act on the instructions of or otherwise contract and deal with the principal's attorney in fact or successor attorney in fact and, in the absence of actual knowledge, as defined in subsection 3 of this section, is not responsible for determining and has no duty to inquire as to any of the following: ...

does not reside. (ECF No. 22, pp. 2-3). MetLife claims that it cannot redirect the payments to the new address because it would benefit only Plaintiff, and ignores MetLife's responsibilities to Mr. Sierra.

Further, MetLife argues that, under the Annuity Contract, it owes a duty to Mr. Sierra to mail periodic payments to the address designated by him and, likewise, Mr. Sierra has a duty to keep that mailing address current. The Annuity Contract provides that MetLife's obligation is discharged upon mailing the periodic payments to Mr. Sierra to the address designated by him. MetLife claims that mailing the payments to an address not designated by him and where MetLife knows he does not live would deprive MetLife of "the certainty of discharge of its obligation to make each Periodic Payment upon mailing a valid check in the amount of the payment to the address Jaime Sierra designated." (ECF No. 22).

The Court holds that MetLife shall recognize the Durable Power of Attorney for the limited purpose of allowing Plaintiff to change the mailing address to be used by MetLife for correspondence, including the periodic payments under the Annuity Contract, to Mr. Sierra. The Durable Power of Attorney executed by Mr. Sierra contemplates Plaintiff performing any number of acts on Mr. Sierra's behalf, including changing Mr. Sierra's address. Likewise, it ratifies the actions Plaintiff performs on Mr. Sierra's behalf. MetLife's claimed concern that Plaintiff is acting contrary to the benefit of its payee, Mr. Sierra, is contravened by the terms of the Durable Power of Attorney, which authorizes Plaintiff to "perform any and every act and thing whatsoever requisite, necessary or convenient to be done in and about the premises as fully and effectually, and to all intents and purposes, as I might or could do or cause to be done in my own person, if personally acting..." Thus, the Court finds no basis for MetLife's refusal to recognize the Durable Power of Attorney for purposes of changing Plaintiff's address.

The Court also concludes that MetLife's fear that Mr. Sierra could return and claim payment under the Annuity Contract is not warranted.  Under the Durable Power of Attorney, Mr. Sierra ratified and confirmed all of Plaintiff's acts on his behalf.  (Durable Power of Attorney, p. 10).  Her change of his address (and, although not before the Court, her negotiation of the checks) are binding on Mr. Sierra, his heirs and his estate. (Id.).  Therefore, MetLife's concern that it will be faced with inconsistent liabilities is unfounded based upon the terms of the Durable Power of Attorney.  Mr. Sierra cannot return and claim that MetLife acted improperly by acknowledging Plaintiff's actions pursuant to the Durable Power of Attorney because he has ratified any actions she performs pursuant to her powers thereunder.

Finally, the Court agrees that the out-of-state cases cited by MetLife in its Memorandum in Support of its Motion do not compel ruling in its favor.  See ECF No. 16, p. 9 (citing In re Application for Approval, 136 P.3d 765, 769-70 (Wash. Ct. App. 2006)).[4]  The cases cited address the proposed transfer of interests in structured settlement agreements by means of a power of attorney.  As discussed, Plaintiff does not seek a transfer of Mr. Sierra's interest.  Rather, she seeks only to utilize the Durable Power of Attorney to effectuate a change of address, which is contemplated and ratified under the Durable Power of Attorney.

Accordingly,

---

[4] MetLife also cites to Symetra Life Ins. Co. v. Rapid Settlements, Ltd., No. H–05–3167, 2011 WL 4807901, at *22-23 (S.D. Tex. Oct. 11, 2011), but that section refers to an attorneys' fee award.  The Court thinks MetLife may have intended to refer to Symetra Life Ins. Co. v. Rapid Settlements, Ltd., 657 F. Supp. 2d 795, 828 (S.D. Tex. 2009), but that case also is not persuasive for the reasons discussed.

**IT IS HEREBY ORDERED** that Defendant and Counterclaimant MetLife Insurance Company of Connecticut's Motion for Summary Judgment [15] is **DENIED**, and Plaintiff's Motion for Summary Judgment [18] is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 17th day of July, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE